Will the clerk please call the next case? 116-1164-9C, Neighbor Network v. Brea S. Counsel? There's only one counsel. I'm sorry? Where's your opponent? Are you the only one? I'm sorry. Would you suggest that in this, again, since we're covering things today, if you're counsel of record, you have the benefit of sitting at those tables. You don't sit back with the spectators. You spent too much time and money and hard effort trying to become admitted to the bar so you had that privilege. And I don't know what's – I see this more in workers' comp cases than anywhere else in our other venues. So just let this be another suggestion. Okay. Thank you. Counsel, you may proceed. May it please the Court? Your Honors, opposing counsel, my name is Andrea Carlson, and I represent the plaintiff appellant in this matter, Labor Network. The plaintiff's position in this case can be summarized as the decision of the Illinois workers' compensation decision was against the manifest weight of the evidence for three principal reasons, which I will be addressing in turn. The three principal issues in this case are that, first, the commission improperly concluded that the defendant had sustained an accident to her right elbow on April 20, 2016, arising out of and in the course of her employment. Second, the commission's decision finding that the defendant's current condition of ill-being regarding the right elbow and the subsequent award of prospective surgery was against the manifest weight of the evidence. And accordingly, with these first two arguments, the commission's award of temporary total disability benefits and the prospective surgery is against the manifest weight of the evidence. The first issue regarding the accident itself, it's the plaintiff's position that the defendant failed to meet her burden of proof, showing that her injuries did rise out of and in the course of her employment. Now, the defendant worked as a packer on the production line of Clover Hill Bakeries, where she would assemble cardboard boxes and prepare packages of baked goods. This case really boils down to a claimed aggravation after two days of increased capacity work. The defendant testified at trial that a coworker had fallen asleep on the line, and therefore, she needed to pick up the slack, so to speak. Kennedy, your testimony was she was required to assemble 250 boxes every 10 minutes. It seems like a lot, doesn't it? Yes, Your Honor. And according to the testimony offered as well, these boxes were made of cardboard. It appears that the weights that she was working with were less than 5 pounds. Yes. And that was before April 20th when she testified she had to do double the work of that. The commission, according to the record, found the claimant's testimony to be believable and unrebutted, including the testimony about the pain, the physical difficulty she experienced. So what are we to do with that? Your Honor, the main issue here is the fact that while she does complain of pain before the date of April 20th, 2016, she's claiming a right elbow injury superimposed on that repetitive motion claim based on only two days of working at an increased capacity on the line to make up for a coworker. That's what she testified to. Yes. Didn't she testify that she was complaining about elbow problems way before that? She in the testimony. It just got worse? In the testimony offered at trial and in the medical record, she had complained of pain starting about a month before April 20th, 2016. And it's this April 20th, 2016 date where she started working this additional capacity work to make up for her coworker, this overwork. And this is really the crux of the issue in terms of accident. She testified that during these two days of increased work, she was required to bend and shape these cardboard boxes, as well as lift bakery items, which weighed less than five pounds. Now, these activities couldn't be classified as heavy or even medium work. I think they'd rightfully be classified as light-duty work. Repetitive trauma was the basis of her complaint. Repetitive trauma was Complaint. Yes. Additionally, with a superimposed right elbow injury. You relied heavily on Dr. Kornblatt's opinions, correct? Yes. And so, reading this, it appears that the commission found that Dr. Kornblatt's opinions were neither well-supported nor persuasive. Again, how do we get around the commission's assessment of the weight of the testimony? Yes, Your Honor. And the commission does have the duty to weigh the conflicting evidence, to weigh the testimony of witnesses, including these providers. In this case, Dr. Kornblatt did physically examine the defendant herself. He found in his examination that she didn't demonstrate the pain that would be associated with a tendon tear or a ligament tear, and that she was still capable of full-duty work. Given that he had examined her and reviewed the MRI reports, he didn't find any basis for the recommended surgery. Dr. Kornblatt said it took him 10 to 15 minutes to conduct the examination. The claimant said it lasted less than five. Yes, Your Honor. And that would be a conflict for the decision to weigh the evidence in terms of that conflicting testimony. And that would go to the believability of Dr. Kornblatt's opinion, wouldn't it, if it took less than five minutes to arrive at? Yes. It would go to the weight of his testimony. So if you could summarize for us. I mean, obviously, you're acknowledging the basic principles that weigh against your argument in this case. Yes. How did the commission err? What was the fundamental problem? They weighed the credibility. They weighed the expert evidence. Did you passively acknowledge they have the right to do so, found in favor of the claimant? So tell us specifically where they erred. Yes, Your Honor. The commission erred in regards to accident, regarding two days of overwork, substantiating an accident to the right elbow, and also in terms of causation. When the defendant underwent a right elbow MRI, she was treated by Dr. Poping, one of her treaters. Dr. Poping himself noted that the MRI images were not quite optimal for what was going on, yet he went ahead and he diagnosed an apparent partial tear of the surgery. This is also despite the fact that in November 2016, Dr. Poping had noted that after some conservative care, the defendant was back to baseline pain. You keep saying the defendant. You mean the claimant? Yes. My apologies. Yes, I would be referring to the claimant in this case. Nonetheless, she was back to baseline. Also, Dr. Carizza, the radiologist who reviewed these MRI images, found an unremarkable exam. There was no noted issues with the tendons, the ligaments, nothing there. So Dr. Poping was the only one to find that there was a possible partial thickness tear necessitating surgery, despite the fact that the MRI images were not optimal. So what you're saying is that your position is, Cornblatt's opinion, is that it's a brain or what? Dr. Cornblatt found that any injury that she complained of was myofascial in nature. What does that mean? Skin deep, I guess in layman's terms. But, yes, perhaps classified as a strain. I'm not a doctor myself. But he did find that her complaints were myofascial in nature. And upon his examination, he found her to be at maximum medical improvement. Notably, he also found that her complaints, because of her myofascial nature, if she were to be experiencing an issue with the tendons or the partial thickness tear, one would think that she would present in more extreme pain at the independent medical examination, which she did not. So in this case, the commission should have properly weighed these opinions and found the records and the testimony of Dr. Cornblatt and Dr. Carizza, the radiologist, to be more persuasive than Dr. Poping and the claimant's other treating physicians. Additionally, Your Honors, because the defendant hasn't proven that there, by a preponderance of the evidence, or the claimant in this case has not proven by a preponderance of the evidence that there was a compensable accident or a causal relationship between her work and alleged accident, the medical care that was awarded would be unreasonable and unnecessary in regards to her date of accident. It should also be noted that Dr. Poping noted himself that the defendant had some preexisting conditions, including diabetes, that could have contributed to what appeared to be a diffuse injury to the nerve of some degree. So there's also the issue of some preexisting conditions. Lastly, I don't go to the tear. No, Your Honor. It would be our position that because the accident did not arise out of and in the course of the claimant's employment and that there is no causal connection between her right elbow condition and the injury itself, that the award of TTE would be against the manifest way of the evidence. Of course, temporary disability benefits are owed to workers under the Act. If they're totally incapacitated from work. In the alternative, if the petitioner were to prove an injury with substantial evidence, it would be our position that the award of TTE benefits beyond the independent medical examination with Dr. Kornblatt on January 30, 2017, that no benefits would be owed after that point, given that he did find her at maximum medical improvement and found no work restrictions and that one armed restricted work remained available through the employer. If there are no other questions, I would conclude by reiterating that the decision of the Workers' Compensation Commission should be overturned. Thank you for your time. Thank you, Counselor. We have time in reply. Counselor, you may respond. Good morning. May it please the Court. My name is Carolina Gizmanski and I am here on behalf of the appellee defendant Maria Rees-Mayne. It is the defendant's position that the record here has sufficient evidence to support the Commission's finding that the accident did occur and that it was positively related to the defendant's employment. The defendant was credible in her testimony regarding the repetitive nature of her job. She testified that she worked 12-hour shifts. Those were divided into two separate parts. Part of the shift she was working assembling boxes. Part of the shift she was working packaging bread. It was that repetitive nature that caused her to experience pain in her right elbow. The aggravating activity of that day where she had to do double the work then aggravated that already repetitive trauma injury that she sustained. Labor is not disputing what you're saying. They're not disputing the nature of her workload, are they? I'm sorry? There's never been any question about the nature of her workload. Labor is not disputing that, are they? No, they have not disputed the nature of her workload. So what are they disputing? I guess their dispute is that they are claiming that her entire claim is based on her testimony that her injury stemmed from two days of extra work, which is not what her testimony is and not what the records reflect. Her testimony is that she already had this pain from the repetitive nature of her job and then that pain was then aggravated by the extra work that she had to perform on April 20th. Their own wage statements that they introduced into evidence actually support and corroborate the testimony of the defendant regarding the hours she worked, the overtime she worked. They never introduced any evidence into the record that did not corroborate her testimony or that contradicted it. The cases that they cited, U.S. Steel and McDonald, to support the idea that the only evidence that the defendant presented was her own testimony does not apply here because in both of those cases, there was ample evidence to discredit the Petitioner in that case and to not corroborate his testimony. You had Dr. Popping on your side. Your opponent's pointing to Dr. Kornblatt's testimony and alluding to the fact he was the only expert that actually physically examined the claim. She's arguing that that put him in a superior position to get a professional opinion. What's your response to that? Dr. Kornblatt only examined the Petitioner one time for 15 minutes. By his own admission, he is a spine surgeon. He only deals with upper extremities in situations where he has to. The defendant in this case was treated by Dr. Markarian and Dr. Popping. Both of those doctors had the same diagnosis of right lateral epicondylitis, and that is also the same diagnosis that plaintiff's own initial doctor had when she went to the doctor that was recommended by her employer. Additionally, while Dr. Kornblatt reviews the incident report from the incident, that report does specify that the defendant worked for 12-hour shifts and that the nature of her job was repetitive, yet he fails to mention the repetitiveness of the job at all in his report and simply says that there was no specific event that contributed to the injury of the defendant. He also, while finding no objective findings, he also does not find any symptom magnification on the part of the defendant here, and also oddly enough recommends that she does do her own exercises at home to deal with the injury. Additionally, the records that Dr. Kornblatt reviewed were not complete. He never actually reviewed records from Dr. Markarian or Dr. Popping in this case. He never reviewed the actual MRI films. The defendant does point, I'm sorry, the plaintiff does point out that Dr. Kuritsa's MRI report only points out that there was post-traumatic swelling and is not in line with the diagnosis of Dr. Popping. Dr. Popping does comment that the report itself was not optimal, but like any good physician, he analyzes the actual images of the MRI report along with the treatment history of the defendant and her history, her employment history and description of her job to come to the conclusion that she's in need of surgery. And he does that not initially, but he also does an injection, and he does review the fact that she was not able to improve with the conservative care that she had prior to the recommendation. Let me ask you this. Labor points to Dr. Kornblatt's opinion and Dr. Kuritsa's interpretation of the MRI that the claimant's right elbow that was taken on September 7th, 2016, is revealing some post-traumatic soft tissue bruising. So what do you make of that argument? I think that that's still an indication that it's not that the MRI was completely unremarkable. There were findings on the MRI, and I think that that supports Dr. Popping's approach to the situation in which he actually reviewed the actual films, and then also the objective findings and her subjective complaints to come to the conclusion that she required surgery. And Dr. Kuritsa, as a radiologist, simply reviews images. He never physically examined the defendant in this case. So by saying that his opinion or his reading of the images is an opinion as to no surgery doesn't really have any standing because, as a radiologist, he's not in the opinion to recommend surgery to patients. He simply just reviews images. And if there's no further questions? So in theory, she could have the surgery, and it could turn out to be bruising, not a tear. Is that correct? I think that based on her lack of improvement with conservative treatment, I don't think that. I think that Dr. Popping's assessment is correct. I think that it is more than just post-traumatic bruising. She had two injections. The accident happened in April. There is not a recommendation for surgery until November, where she exhausted all conservative care. She is still in pain. She would still like the surgery. So I would think that Dr. Popping would be correct, as well as Dr. Martire. So we're really dealing with probabilities. It's more probable there's a tear there than there is a bruise based upon that history and prior treatment, right? Yes. So who gets to decide those probabilities? I think that the treating physicians are in a better position here. In a court of law, who gets to decide those probabilities. But it's more probable. The commission would be in that position because they're judging the credibility of the witnesses as well as they're in the position to give more weight to the treating physicians of the defendant. And if there are no further questions, I would ask that the decision be affirmed. I don't believe there are. Thank you, counsel. Thank you. Counsel, you may reply. Your Honors, I'll address one issue very briefly in regards to causation. In this case, there's just a lack of substantial evidence regarding the issue of the right elbow diagnoses and the recommended surgery. As it's been stated here, the MRI report itself, as interpreted by Dr. Carizza, the images show that all tendons and ligaments were intact. There was normal joint alignment and no fracture or dislocations. The pain she demonstrated at her IME with Dr. Kornblatt was myofascial in nature only. Given the MRI imaging and her physical exam with Dr. Kornblatt, there just simply isn't any substantial evidence to support the decision of the commission, and we would ask that it be overturned. Thank you. Thank you, counsel, both for your arguments in this matter. We'll be taking your advisement. The written disposition shall be